In the Matter of SAMUEL J. BUCHBINDER, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, June 25, 1963.

*John G. Bonomi* of counsel (*Raymond P. Whearty* with him on the brief), for petitioner.

*Michael P. Direnzo* for respondent.

*Per Curiam.* Respondent was admitted to practice in this Department in 1928. In 1960 he represented one Janes, the owner of a delicatessen, in the sale of that business. As a step in that transaction, the buyers placed $9,000 in escrow with respondent, conditioned upon approval of the transfer of a license to sell beer by the Alcoholic Beverage Control Board. From the outset, the respondent treated this escrow deposit in an unethical and unprofessional manner. The money passed from the purchaser to Janes and thence to respondent. Although respondent gave a receipt for the entire sum, he allowed Janes to retain $1,000. With Janes' knowledge he deposited the balance in his personal account, which account was overdrawn at the time. He continued to draw against the account. In September, 1960, the transfer of the license was approved and Janes

demanded his money. There was then slightly over $3,500 in the account. Respondent gave Janes a check for $3,500, which he had certified. He also agreed to assume certain debts of Janes which arose out of the sale of the business (broker's commission, unpaid sales tax, two small claims for balances due on fixtures, and respondent's own fee) and gave a check for the balance of $2,807.50. Respondent claims that Janes knew there were no funds to meet this check. Respondent also gave a check to the broker which was returned for insufficient funds, and Janes was forced to pay him. In November, Janes, having deposited the check and having had it returned, went to the District Attorney. In January, 1961, respondent was indicted for grand larceny. In February, 1962, he pleaded guilty to petit larceny and received a suspended sentence. A condition of his probation was monthly payments to Janes' estate (he had died in April, 1961). Respondent has kept up the payments and, at the time of the hearing, had restored $1,545. He then owed approximately $2,800.

Respondent did not contest any of the charges brought against him except that he disputed that his conduct was unprofessional. In view of the conceded facts, this contention is without merit. The only serious question is the sanction to be meted out. We have repeatedly pointed out that the purpose of disciplinary proceedings is to protect the public in its dealings with members of the Bar, to the end that the former may be assured that all transactions are conducted on a high ethical plane. The incident which gave rise to this proceeding is illustrative of the necessity of such an approach. It is the usual procedure in the course of a business transaction where funds are paid conditionally to provide for an escrow agreement, and where the sums involved are not unusually large the escrow holder is almost invariably the attorney for one of the parties. The acceptance of the attorney for service in that capacity is general and without question. The fact that this is so bespeaks an attitude of the business community towards the Bar which reflects great credit on both, and all reasonable steps should be taken for its preservation.

It necessarily follows that the elements which determine the disposition of the proceeding are the degree of probability of further lapses on the part of the respondent, the effect on the community of the steps taken by the Bar to maintain its house in order, and lastly the prophylactic effect on the Bar. We deem the last to be of least significance because we do not believe that ethical standards are maintained by fear of punishment. The first consideration, involving, as it does, an estimate of future conduct, requires an appraisal of character which in every case

is difficult and must necessarily result in highly individualized conclusions. And were this the only factor, the institution of rigid degrees of discipline could be rightfully questioned (see dissenting opinion of McNALLY, J., in *Matter of O'Doherty,* 14 A D 2d 4, 13). But, as indicated, this is only one of the factors. The effect of discipline on the reputation of the Bar, though not entirely a concrete concept, still admits of more impersonal determination. In that respect what has been done before is a surer guide, and precedent acquires more meaning. So it may be noted that the appropriation of escrow funds has frequently in the past been a ground for disbarment (*Matter of Berkson,* 282 App. Div. 265; *Matter of King,* 286 App. Div. 233; *Matter of Southall,* 7 A D 2d 360; *Matter of Ellenbogen,* 7 A D 2d 390; *Matter of Militana,* 8 A D 2d 348; *Matter of Wilkes,* 11 A D 2d 35; *Matter of Greenstein,* 11 A D 2d 362; *Matter of Forman,* 11 A D 2d 380; *Matter of Lo Brutto,* 18 A D 2d 133). Contrariwise, there are holdings where escrow funds were converted and where the invasion of a trust might be said to involve the same degree of culpability, but other factors have ameliorated the degree of discipline. Such factors are where the conversion can reasonably be interpreted as an excusable delay in accounting rather than an outright taking (*Matter of Spellman,* 4 A D 2d 215; *Matter of Schreiber,* 282 App. Div. 250; *Matter of Brucia,* 5 A D 2d 488; *Matter of Levin,* 9 A D 2d 532). Here, respondent's plea of guilty to a charge involving the conversion precludes such an interpretation. While restitution does not cure the wrongdoing (*Matter of Kaliski,* 286 App. Div. 232) and has been said not to restore character (*Matter of Steinberg,* 193 App. Div. 502), it is a factor not to be ignored, as is evidenced by the more lenient dispositions in several cases where it is present (*Matter of Kaliski, supra; Matter of Detsky,* 16 A D 2d 595; *Matter of Lewin,* 3 A D 2d 423). But a restitution which is the result of a condition of probation enforced through criminal proceedings, as is the case with respondent, cannot be considered for any purpose. Also, there is the factor of the informal arrangements between the respondent and his client. Where these have had an influence on the conversion, something less than disbarment has resulted (*Matter of Smith,* 2 A D 2d 382). But this can be of small avail to respondent because, while his defalcation only affected his client, had the escrow conditions not been fulfilled it would have affected third parties with whom his relationship was purely professional. The happenstance that these parties were not harmed cannot influence projection of respondent's future conduct. Lastly, but most important in this proceeding, is the fact that this is a single instance in a long and otherwise

unquestioned term of service at the Bar. This factor almost always has been accorded favorable consideration (*Matter of Reape,* 18 A D 2d 132; *Matter of Colwin,* 12 A D 2d 83; *Matter of Hahn,* 285 App. Div. 592). In other matters, while this feature was not specifically mentioned it was undoubtedly an influencing factor (*Matter of Schreiber, supra; Matter of Smith, supra; Matter of Broderick,* 4 A D 2d 173).

It follows that a severe degree of disciplinary sanction is called for. The eventual question is whether the single dereliction in a long career is so indicative of the absence of requisite character or presents a picture of untrustworthiness to the public so ineradicable that explusion from the Bar is demanded. It is concluded that respondent's usefulness as a member of the Bar is not precluded, and that public confidence can be maintained by a lesser sanction. Respondent should be suspended for a period of three years.

BOTEIN, P. J., McNALLY, STEVENS, EAGER and STEUER, JJ., concur.

Respondent suspended for a period of three years.